# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATRICIA S. PIERCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-16-092-RAW-KEW |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Patricia S. Pierce (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 27, 1971 and was 43 years old at the time of the ALJ's decision. Claimant completed her high school education with special education classes. Claimant also completed certified nurse's aide training but never worked in the field. Claimant has no past relevant work. Claimant alleges an inability to work beginning September 24, 2003 due to limitations resulting from fibromyalgia, spinal stenosis, arthritis, congestive heart

failure, diabetes, and depression.

## Procedural History

On June 13, 2012, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On April 15, 2014, Administrative Law Judge ("ALJ") Doug Gabbard, II conducted an administrative hearing by video with Claimant appearing in Fort Smith, Arkansas and the ALJ presiding in McAlester, Oklahoma. On August 13, 2014, the ALJ issued an unfavorable decision. On February 3, 2016, the Appeals Council denied review of the decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) reaching an RFC

that is not supported by the evidence; and (2) making erroneous findings at step five due to the unsupported RFC.

## RFC Evaluation

In his decision, the ALJ determined Claimant suffered from the severe impairments of diabetes, essential hypertension, obesity, fibromyalgia, major depressive disorder, and personality disorder. (Tr. 21). The ALJ concluded that Claimant retained the RFC to perform light work except that she can perform unskilled work. He also determined Claimant must only occasionally be required to understand, remember, and complete detailed instructions because she had "marked" limitations in this area. Her supervision must be simple, direct, and concrete. She must work in a setting where she can frequently work alone and where interpersonal contact with supervisors and co-workers must be incidental to the work performed, such as assembly work, but because of problems with concentration, persistence, and pace, she must not be required to work at production line speeds. Claimant could work where there is a requirement for only occasional adaptation to workplace changes and there is no contact with the general public. Claimant could perform work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 25).

After consulting with a vocational expert, the ALJ concluded

Claimant could perform the representative jobs of conveyor line bakery worker and housekeeping cleaner, both of which were found to exist in sufficient numbers in both the regional and national economies. (Tr. 30). As a result, the ALJ found Claimant was not disabled since June 13, 2012. (Tr. 31).

Claimant contends the ALJ failed to establish an RFC which is supported by the medical record. In making this argument, Claimant asserts several sub-points. She first asserts that the ALJ should have included degenerative disc disease and breast abscesses as a severe impairments.

Because the ALJ did find that Claimant had severe impairments, any failure to find Claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effects of these impairments and account for them in formulating Claimant's RFC at step four. See, e.g., <u>Carpenter v. Astrue</u>, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [Claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits

6

conclusively at step two and proceeded to the next step of the evaluation sequence.'"), quoting Langley v. Barnhart, 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. See also Hill v. Astrue, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].

The ALJ considered these conditions but found the breast condition to impose no limitation upon Claimant. (Tr. 22). Nothing in the record indicates that the degenerative conditions to which Claimant refers causes any functional problems with Claimant given their minimal nature at this time. (Tr. 267). The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. See e.g. Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant

unable to engage in any substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). The fact degenerative changes were noted and diagnosed does not translate into a severe impairment. The ALJ did not err in finding these conditions did not significantly limit Claimant's ability to work.

Claimant next asserts that the ALJ improperly discounted the opinion of his treating physician, Dr. Rick Robbins. Dr. Robbins completed a medical source statement on Claimant dated February 4, 2013. He concluded that Claimant could sit and stand for 15 minutes and walk for 20 minutes at a time and sit and stand for two hours out of an eight hour workday. He does not indicate how long Claimant could walk out of an eight hour workday. He noted Claimant did not need an assistive device to walk but did need rest breaks every hour or less. Claimant was also required to alternate between sitting and standing at 15 minute intervals. She could rarely lift or carry five pounds. Claimant's lower extremities were found to

8

be limited. She could occasionally push/pull, but rarely work in extended position, work above shoulder level, work overhead, or reach. Dr. Robbins opined Claimant could rarely grasp or finger. She could rarely bend but never squat, crawl, stoop, crouch, kneel, balance, or climb. She should completely avoid handling vibrating tools or be exposed to extremes in temperature or humidity. (Tr. 327-29).

The ALJ concluded that Dr. Robbins' opinion was not entitled to controlling weight because it was contrary to his treatment notes, inconsistent with his conservative treatment, and inconsistent with the remainder of the record. He found Dr. Robbins' treatment notes contain "little objective evidence to support such extreme limitations." He also determined that the consultative examination performed by Dr. Traci Carney was inconsistent with Dr. Robbins' functional limitations. (Tr. 28-29).

While the ALJ's citation to the appropriate authority to apply in evaluating the opinion of a treating physician is admirable, he provides little to no explanation as to how he applied the required elements. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the

9

opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. §

404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

While he treatment record demonstrates Claimant was largely treated with medication by Dr. Robbins for her various conditions, her claims of pain are documented in the record. For instance, his fibromyalgia and chronic back pain and the source of that pain are recorded. (Tr. 257, 264, 266, 267). This would indicate that the ALJ should have provided some weight to Dr. Robbins' functional restrictions. On remand, the ALJ shall re-evaluate Dr. Robbins' source statement and, if reduced weight is provided, shall set forth with specificity the basis for the reduced weight with reference to the medical record.

Similarly, Claimant challenges the manner in which the ALJ addressed the report of Dr. Robert Spray. Dr. Spray authored a medical source statement dated June 10, 2014. He indicated Claimant was markedly limited in the areas of carrying out complex

instructions, the ability to make judgments on complex work-related decisions, and responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 324-25). The ALJ gave this opinion "little weight", stating the level of restriction appeared to be based upon the subjective reports from Claimant. (Tr. 28).

"[T]he fact that a medical source relies on a plaintiff's subjective reports of her symptoms provides no basis for discrediting a medical opinion." Gonzales v. Colvin, 69 F. Supp. 3d 1163, 1170-71 (D. Colo. 2014) citing Nieto v. Heckler, 750 F.2d 59, 60-61 (10th Cir. 1984); Gutierrez v. Astrue, 2008 WL 5246300, at 4 (D.Colo. Dec. 15, 2008). "The ALJ's own disbelief of plaintiff's subjective complaints provides no basis on which to discredit an otherwise valid medical source opinion, since the ALJ may not substitute his lay opinion on the effect of medical findings for that of a medical professional." Id. citing Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004); McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)("A]n ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.").

It should be expected with regard to mental limitations that Claimant's statements would be an integral part of the evaluation process by this mental health professional. On remand, the ALJ shall re-evaluate this opinion evidence and provide specific and legitimate reasons for its consideration.

Claimant also challenges the ALJ's assessment of her credibility. Since the ALJ's decision in this matter, the Social Security Administration has revised its rulings on evaluating statements related to the intensity, persistence, and limiting effects of symptoms in disability claims - what heretofore has been known as "credibility" assessments. Soc. Sec. R. 16-3p, 2106 WL 1119029 (March 16, 2016), superceding Soc. Sec. R. 96-7p, 1996 WL 374186 (July 2, 1996). On remand, the ALJ shall apply the new guidelines under Soc. Sec. R. 16-3p in evaluating Claimant's testimony regarding "subjective symptoms".

**Step Five Assessment**

Should the ALJ make any alteration to his RFC based upon the issues on remand, he should also reassess his hypothetical questioning of the vocational expert at step five.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not

13

applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of March, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE